IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SIMON SMITH**<br>**2219 Tanglewood Drive**<br>**Toledo, Ohio 43614** | **CASE NO.:** |
| **Plaintiff,** | **Judge** |
| **vs.** | |
| | **COMPLAINT WITH JURY DEMAND** |
| **DTE ENERGY COMPANY**<br>**c/o CSC-Lawyers Incorporating Service,**<br>**Statutory Agent**<br>**3410 Belle Chase Way**<br>**Ste 600**<br>**Lansing, MI 48911** | **Paoff & Robinson, LLC**<br>Diana Robinson (P81360)<br>405 Madison Ave., Suite 1100<br>Toledo, Ohio 43604<br>Ph.: (419) 243-9005<br>Fax: (419) 243-9404<br>diana@prwattorneys.com<br>*Attorney for Plaintiff* |
| **Defendant.** | |

Plaintiff, Simon Smith, by and through counsel, complains of Defendant DTE Energy Company and alleges as follows:

## PARTIES

1. Plaintiff, Simon Smith ("Simon") is an individual citizen of the State of Ohio, residing in the City of Toledo, County of Lucas.

2. Defendant, DTE Energy Company ("Defendant") is a Michigan for profit corporation, operating, among other things, a nuclear power plant in Newport, Michigan referred to as Fermi 2 Power Plant ("Fermi 2").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this case presents a federal question under the Energy Reorganization Act, 42 U.S.C. § 5851 ("ERA").

4. Simon administratively exhausted his claim under the ERA in the U.S. Department of Labor, OSHA Case No. 301044435. Simon filed his complaint with OSHA on October 29, 2025. More than one year has passed since the filing of his complaint, the Secretary has not issued a final decision, and there is no showing that such delay is due to bad faith. Accordingly, this Court has *de novo* jurisdiction to hear Simon's claim pursuant to the ERA, 42 U.S.C. § 5851(b)(4).

5. Venue is properly laid in the Eastern District of Michigan, Southern Division under 28 U.S.C. § 1391(b) because the claim alleged herein arose in Monroe County, Michigan and Defendant is doing business within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

6. Defendant is an energy company that, among other things, operates Fermi 2, a nuclear power plant, is subject to oversight by the Nuclear Regulatory Commission ("NRC"), and is an employer as defined in the ERA.

7. Simon began working for Defendant in or around August of 2011 as an electrical journeyman.

8. In 2015 and 2016, Simon served on the company's Electrical Safety Council.

9. In or around March of 2016, Simon was promoted to a first line supervisor.

10. In or around June of 2023, Simon was again promoted, this time to the supervisor over Nuclear Support Services ("NSS") and the Metrology Lab ("Met Lab").

11. Throughout his employment, Simon performed well and received positive performance reviews.

12. Shortly after his promotion to supervisor over NSS and Met Lab, Simon identified concerns within the groups, specifically that both groups were understaffed, backlogged, and needed improvement in various areas.

13. In or around September of 2023, Simon began detailing the issues that he identified and sent his observations and concerns to his immediate supervisor Brad Gallup ("Gallup").

14. Among the issues identified by Simon was the fact that tools (aka "assets") were not being properly calibrated at the time of use.

15. Specifically, tools are supposed to be calibrated before they are checked out and then they are to be recalibrated when they checked back in. This is necessary because it is important to know that tools are in proper working order. If, when checked back in, the calibration fails, it may suggest the tool was not working properly and thus any work done may not have been done correctly because of the equipment used.

16. Simon also noted that there was no process for recalling overdue items and there was an extremely large backlog of records.

17. All these concerns could have resulted in significant issues impacting both the safety of employees and the public at large.

18. In addition to sending his concerns to Gallup, Simon also alerted Human Resources.

19. Over the next couple of months, Simon continued to have concerns and reported them to Gallup and to HR.

20. He was informed that his concerns were brought to the Maintenance Director, Tim Barlow ("Barlow"), who is Gallup's immediate supervisor.

21. Management validated Simon's concerns but nothing was done to remedy them.

22. By February of 2024, Simon realized that the safety issues were far greater than he had originally thought, and that outstanding issues dated back to at least 2021.

23. There was a large number of assets missing and/or overdue for recalibration. This means that tools were not returned for recalibration to ensure that they were in proper working order.

24. In the proper course, when this occurs, condition reports are to be filed prompting an investigation.

25. At that time (2021), the department was under the supervision of someone other than Simon and Simon learned that that supervisor had instructed employees not to write condition reports.

26. Upon learning this, Simon immediately corrected his subordinates' understanding and instructed them to file condition reports.

27. In or around late February of 2024, the first condition reports for these safety issues were written.

28. This sparked the interest of the NRC resident inspector.

29. Simon, however, was instructed by management not to have any communications with the NRC resident inspector.

30. By May of 2024, Simon had identified 79 (later found to be 89) assets that were past due for calibration, 258 lost or missing assets, and 45 assets with calibration failures and no investigation.

31. At the end of May, Simon wrote and submitted condition reports outlining the issues with these assets.

32. For the first time, in June of 2024, Barlow requested Simon to provide information to the NRC resident inspector concerning the issues.

33. Simon did just that and outlined the issues he identified to date and expressed his concern that they could have a direct impact on safety and needed to be investigated.

34. Simon continued to express his concerns about the safety issues to management and continued to file condition reports.

35. On or about August 1, 2024, Simon was in attendance at a meeting with senior leadership, and he reported additional concerns.

36. Four days later, Simon's employment was terminated.

37. Defendant's proffered reason for Simon's termination was pretext for retaliation.

## COUNT ONE
### Violation of the ERA

38. Simon realleges paragraphs one 1 through 37 as if fully set forth verbatim below.

39. Simon's protected activity, including, but not limited to, internally addressing his safety concerns, directing his subordinates to file and by filing himself condition reports, truthfully expressing his safety concerns to the NRC, and otherwise participating in investigations into potential safety issues at Fermi 2, was a motivating factor in his termination in violation of the ERA.

40. Defendant's actions were taken with malice, in bad faith and/or in reckless disregard

of Simon's rights.

41. As a direct and proximate result of Defendant's actions as set forth above, Simon has been damaged. Simon has suffered:

    a.      Lost wages and fringe benefits;

    b.      Loss of the opportunity to continue the gainful employment in which he had been engaged;

    c.      Loss of future earning and front pay;

    d.      Loss of reputation;

    e.      Humiliation, embarrassment and loss of self-esteem resulting from his abrupt termination from employment; and

    f.      Time and money in endeavoring to protect himself from Defendant's unlawful discrimination, including costs and reasonable attorney's fees of this action.

**WHEREFORE**, Simon prays as follows:

A.      That this Court award such equitable relief as is proper as compensation for loss of Simon's opportunity to engage in gainful employment;

B.      That this Court award Simon an amount to be determined at trial as compensation for humiliation, embarrassment, loss of reputation, and loss of self-esteem;

C.      That this Court award Simon back pay from the time of his termination until the time of his reinstatement with interest or that this Court award Simon front pay and loss of future earnings;

D. That this Court award Simon an amount to be determined at trial as compensation for lost fringe benefits;

E.      That this Court award Simon reasonable attorney's fees and the costs of this action;

F.      That this Court award Simon punitive damages; and

G.      That this Court grant Simon such other and further relief as may be just and equitable.

                                          Respectfully submitted,

                                          /s/ *Diana Robinson*
                                          Diana Robinson (P81360)
                                          Paoff & Robinson, LLC
                                          405 Madison Ave., Suite 1100
                                          Toledo, Ohio 43604
                                          Ph.: (419) 243-9005
                                          Fax: (419) 243-9404
                                          *Attorney for Plaintiff*

**PLAINTIFF DEMANDS TRIAL BY JURY**

                                          /s/ *Diana Robinson*
                                          Diana Robinson (P81360)